# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**LAWRENCE BRANCH,**                                          *Petitioner*

*versus*                              **CIVIL ACTION NO. 4:07-CV-138-MPM**

**CHRISTOPHER B. EPPS, ET AL**,                              *Respondents*

## ANSWER TO PETITION UNDER 28 U.S.C. §2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY
_____

**COME NOW** the respondents in the above styled and numbered cause and files this Answer to the Petition for Writ of Habeas Corpus filed in this matter. In response to the allegations contained in the numbered paragraphs of the petition, respondents would show unto the Court the following:

### INTRODUCTORY STATEMENT

This Court has jurisdiction over habeas corpus petitions under 28 U.S.C. § 2254 as amended on April 24, 1996, by the Antiterrorism and Effective Death Penalty Act (AEDPA). The fact that this habeas petition is filed after that date requires that the provisions of the AEDPA be applied in full force to this petition. *Nobles v. Johnson*, 127 F.3d 409 (5th Cir. 1997); *Williams v. Cain*, 125 F.3d 269, 273-74 (5th Cir. 1997); *McBride v. Johnson*, 118 F.3d 432, 436 (5th Cir. 1997) ("Because this case comes within the parameters of the Antiterrorism and Effective death Penalty Act of 1996 (AEDPA), Pub.L.No.104-132, 110 Stat.1214 (1996), we apply the standard of review embodied in the AEDPA. *See Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996), *cert. denied*, 502 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997).").

*See also Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The proper application of the AEDPA is fully explained in the decision of the United States Supreme Court in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

The answer of the respondents is as follows:

1.      Respondents admit the allegations contained in paragraph 1 of the petition.

2.      Respondents deny the allegation contained in paragraph 2 subsection (a) of the petition as the jury returned a guilty verdict against the petitioner on May 22, 2003.

Respondents admit the allegation contained in paragraph 2 subsection (b) of the petition.

3.      Respondents admit the allegation contained in paragraph 3 of the petition.

4.      Respondents admit the allegation contained in paragraph 4 of the petition.

5.      Respondents admit the allegation contained in paragraph 5 of the petition.

6.      Respondents admit the allegations contained in paragraph 6 of the petition.

7.      Respondents admit the allegations contained in paragraph 7 of the petition.

8.      Respondents admit the allegation contained in paragraph 8 of the petition.

9.      Respondents deny the allegations contained in paragraph 9 subsection (a) of the petition, as the date of petitioner's filing of his direct appeal occurred on March 18, 2003, in the Mississippi Supreme Court.

Respondents admit the allegations contained in paragraph 9 subsections (b) through (e) of the petition.

Respondents deny the allegations contained in paragraph 9 subsection (f) of

2

the petition as the grounds listed to have been raised on direct appeal are an embellished and inaccurate naming of the grounds actually raised. An accurate rendering of the direct appeal claims of petitioner are listed in the Procedural Background section of respondent's answer herein.

Respondents admit the allegations contained in paragraph 9 subsections (g) and (h) of the petition.

10.     Respondents admit the allegation contained in paragraph 10 of the petition.

11.     Respondents admit the allegations contained in paragraph 11 subsection (a)(1) through (a)(4) of the petition.

Respondents deny the allegations contained in paragraph 11 subsection (a)(5) of the petition as the grounds listed to have been raised on post-conviction are an abbreviated and inaccurate naming of the grounds actually raised. An accurate rendering of the post-conviction claims of petitioner are listed in the Procedural Background section of respondents answer herein.

Respondents admit the allegations contained in paragraph 11 subsections (a)(6) through (e)(2) of the petition.

Respondents deny the allegation contained in paragraph 11 subsection (e)(3) as the correct date of the resulting denial of certiorari was January 14, 2008.

Respondents deny the allegation contained in paragraph 11 subsection (e)(4) of the petition as the correct citation to the case is: *Branch v. Mississippi*, 128 S.Ct. 1084 (2008).

12.     Respondents deny the allegations contained in paragraph 12, the subsection entitled GROUND ONE, of the petition.

Under the heading entitled GROUND ONE contained in paragraph 12 of the petition the respondents deny the allegations contained in subsection (a).

Respondents admit the allegations contained in paragraph 12 subsections (b) and (c ) of the petition.

Respondents admit the allegation contained in paragraph 12 subsection (d)(1) of the petition.

Respondents deny the allegation contained in paragraph 12 subsections (d)(2) through (d)(7) of the petition as the petitioner refers the reader to responses contained in paragraph 11 without specifics as to which part of paragraph 11 should be referenced.  The respondent is left to speculate as to what information would be relevant for this response.  Respondent's best guess would lead to petitioner's responses in paragraph 11 subsection (a) as being offered as responses in this paragraph.  If so, the respondent admits to the allegations contained in paragraph 12 subsections (a)(2), (a)(3), (a)(4), (a)(6) and (a)(7); and denies the allegations contained in paragraph 12 subsection (a)(5) as an inaccurate rendition of the issues brought forward on post-conviction in the court below.

Respondents admit the allegation contained in paragraph 12 subsection (d)(8) of the petition.

Respondents deny the allegations contained in paragraph 12, the subsection entitled GROUND TWO, of the petition.

Under the heading entitled GROUND TWO contained in paragraph 12 of the petition the respondents deny the allegations contained in subsection (a).

Respondents admit the allegations contained in paragraph 12 subsections (b) and (c ) of the petition.

Respondents admit the allegation contained in paragraph 12 subsection (d)(1) of the petition.

Respondents deny the allegation contained in paragraph 12 subsections (d)(2) through (d)(7) of the petition as the petitioner refers the reader to responses contained in paragraph 11 without specifics as to which part of paragraph 11 should be referenced. The respondent is left to speculate as to what information would be relevant for this response. Respondent's best guess would lead to petitioner's responses in paragraph 11 subsection (a) as being offered as responses in this paragraph. If so, the respondent admits to the allegations contained in paragraph 12 subsections (a)(2), (a)(3), (a)(4), (a)(6) and (a)(7); and denies the allegations contained in paragraph 12 subsection (a)(5) as an inaccurate rendition of the issues brought forward on post-conviction in the court below.

Respondents can not respond to the allegation contained in paragraph 12 subsection (d)(8) of the petition as the petitioner has not entered an answer.

Respondents deny the allegations contained in paragraph 12, the subsection entitled GROUND THREE of the petition.

Under the heading entitled GROUND THREE contained in paragraph 12 of the petition the respondents deny the allegations contained in subsection (a).

Respondents admit the allegations contained in paragraph 12 subsections (b) and (c ) of the petition.

Respondents admit the allegation contained in paragraph 12 subsection (d)(1) of the petition.

Respondents deny the allegation contained in paragraph 12 subsections (d)(2) through (d)(7) of the petition as the petitioner refers the reader to responses contained in paragraph 11 without specifics as to which part of paragraph 11 should be referenced. The respondent is left to speculate as to what information would be relevant for this response. Respondent's best guess would lead to petitioner's responses in paragraph 11 subsection (a) as being offered as responses in this paragraph. If so, the respondent admits to the allegations contained in paragraph 12 subsections (a)(2), (a)(3), (a)(4), (a)(6) and (a)(7); and denies the allegations contained in paragraph 12 subsection (a)(5) as an inaccurate rendition of the issues brought forward on post-conviction in the court below.

Respondents admit the allegation contained in paragraph 12 subsection (d)(8) of the petition.

Respondents deny the allegations contained in paragraph 12, the subsection entitled GROUND FOUR of the petition.

Under the heading entitled GROUND FOUR contained in paragraph 12 of the petition the respondents deny the allegations contained in subsection (a).

Respondents admit the allegations contained in paragraph 12 subsections (b) and (c ) of the petition.

Respondents admit the allegation contained in paragraph 12 subsection (d)(1) of the petition.

Respondents deny the allegation contained in paragraph 12 subsections (d)(2) through (d)(7) of the petition as the petitioner refers the reader to responses contained in paragraph 11 without specifics as to which part of paragraph 11 should be referenced. The respondent is left to speculate as to what information would be relevant for this response. Respondent's best guess would lead to petitioner's responses in paragraph 11 subsection (a) as being offered as responses in this paragraph. If so, the respondent admits to the allegations contained in paragraph 12 subsections (a)(2), (a)(3), (a)(4), (a)(6) and (a)(7); and denies the allegations contained in paragraph 12 subsection (a)(5) as an inaccurate rendition of the issues brought forward on post-conviction in the court below.

Respondents admit the allegation contained in paragraph 12 subsection (d)(8) of the petition.

Respondents deny the allegations contained in paragraph 12, the subsection entitled GROUND FIVE of the petition.

Under the heading entitled GROUND FIVE contained in paragraph 12 of the petition the respondents deny the allegations contained in subsection (a).

Respondents admit the allegations contained in paragraph 12 subsections (b) and (c ) of the petition.

Respondents admit the allegations contained in paragraph 12 subsection (d) of the petition.

7

Respondents deny the allegations contained in paragraph 12, the subsection entitled GROUND SIX of the petition.

Under the heading entitled GROUND SIX contained in paragraph 12 of the petition the respondents deny the allegations contained in subsection (a).

Respondents admit the allegations contained in paragraph 12 subsections (b) and (c ) of the petition.

Respondents admit the allegation contained in paragraph 12 subsection (d) of the petition.

Respondents deny the allegations contained in paragraph 12, the subsection entitled GROUND SEVEN of the petition.

Under the heading entitled GROUND SEVEN contained in paragraph 12 of the petition the respondents deny the allegations contained in subsection (a).

Respondents admit the allegations contained in paragraph 12 subsections (b) and (c ) of the petition.

Respondents admit the allegation contained in paragraph 12 subsection (d) of the petition.

Respondents deny the allegations contained in paragraph 12, the subsection entitled GROUND EIGHT of the petition.

Under the heading entitled GROUND EIGHT contained in paragraph 12 of the petition the respondents deny the allegations contained in subsection (a).

Respondents admit the allegations contained in paragraph 12 subsections (b)

8

and (c ) of the petition.

Respondents admit the allegation contained in paragraph 12 subsection (d)(1) of the petition.

Respondents deny the allegation contained in paragraph 12 subsections (d)(2) through (d)(7) of the petition as the petitioner refers the reader to responses contained in paragraph 11 without specifics as to which part of paragraph 11 should be referenced. The respondent is left to speculate as to what information would be relevant for this response. Respondent's best guess would lead to petitioner's responses in paragraph 11 subsection (a) as being offered as responses in this paragraph. If so, the respondent admits to the allegations contained in paragraph 12 subsections (a)(2), (a)(3), (a)(4), (a)(6) and (a)(7); and denies the allegations contained in paragraph 12 subsection (a)(5) as an inaccurate rendition of the issues brought forward on post-conviction in the court below.

Respondents admit the allegation contained in paragraph 12 subsection (d)(8) of the petition.

Respondents deny the allegations contained in paragraph 12, the subsection entitled GROUND NINE of the petition.

Under the heading entitled GROUND NINE contained in paragraph 12 of the petition the respondents deny the allegations contained in subsection (a).

Respondents admit the allegations contained in paragraph 12 subsections (b) and (c ) of the petition.

Respondents admit the allegation contained in paragraph 12 subsection (d)(1)

9

of the petition.

Respondents deny the allegation contained in paragraph 12 subsections (d)(2) through (d)(7) of the petition as the petitioner refers the reader to responses contained in paragraph 11 without specifics as to which part of paragraph 11 should be referenced. The respondent is left to speculate as to what information would be relevant for this response. Respondent's best guess would lead to petitioner's responses in paragraph 11 subsection (a) as being offered as responses in this paragraph. If so, the respondent admits to the allegations contained in paragraph 12 subsections (a)(2), (a)(3), (a)(4), (a)(6) and (a)(7); and denies the allegations contained in paragraph 12 subsection (a)(5) as an inaccurate rendition of the issues brought forward on post-conviction in the court below.

Respondents admit the allegation contained in paragraph 12 subsection (d)(8) of the petition.

Respondents deny the allegations contained in paragraph 12, the subsection entitled GROUND TEN of the petition.

Under the heading entitled GROUND TEN contained in paragraph 12 of the petition the respondents deny the allegations contained in subsection (a).

Respondents admit the allegations contained in paragraph 12 subsections (b) and (c ) of the petition.

Respondents admit the allegation contained in paragraph 12 subsection (d)(1) of the petition.

Respondents deny the allegation contained in paragraph 12 subsections (d)(2)

10

through (d)(7) of the petition as the petitioner refers the reader to responses contained in paragraph 11 without specifics as to which part of paragraph 11 should be referenced. The respondent is left to speculate as to what information would be relevant for this response. Respondent's best guess would lead to petitioner's responses in paragraph 11 subsection (a) as being offered as responses in this paragraph. If so, the respondent admits to the allegations contained in paragraph 12 subsections (a)(2), (a)(3), (a)(4), (a)(6) and (a)(7); and denies the allegations contained in paragraph 12 subsection (a)(5) as an inaccurate rendition of the issues brought forward on post-conviction in the court below.

Respondents admit the allegation contained in paragraph 12 subsection (d)(8) of the petition.

Respondents deny the allegations contained in paragraph 12, the subsection entitled GROUND ELEVEN of the petition.

Under the heading entitled GROUND ELEVEN contained in paragraph 12 of the petition the respondents deny the allegations contained in subsection (a).

Respondents admit the allegations contained in paragraph 12 subsections (b) and (c ) of the petition.

Respondents admit the allegation contained in paragraph 12 subsection (d)(1) of the petition.

Respondents deny the allegation contained in paragraph 12 subsections (d)(2) through (d)(7) of the petition as the petitioner refers the reader to responses contained in paragraph 11 without specifics as to which part of paragraph 11 should be referenced. The

respondent is left to speculate as to what information would be relevant for this response. Respondent's best guess would lead to petitioner's responses in paragraph 11 subsection (a) as being offered as responses in this paragraph. If so, the respondent admits to the allegations contained in paragraph 12 subsections (a)(2), (a)(3), (a)(4), (a)(6) and (a)(7); and denies the allegations contained in paragraph 12 subsection (a)(5) as an inaccurate rendition of the issues brought forward on post-conviction in the court below.

Respondents admit the allegation contained in paragraph 12 subsection (d)(8) of the petition.

Respondents deny the allegations contained in paragraph 12, the subsection entitled GROUND TWELVE of the petition.

Under the heading entitled GROUND TWELVE contained in paragraph 12 of the petition the respondents deny the allegations contained in subsection (a).

Respondents admit the allegations contained in paragraph 12 subsections (b) and (c ) of the petition.

Respondents admit the allegation contained in paragraph 12 subsection (d) of the petition.

Respondents deny the allegations contained in paragraph 12, the subsection entitled GROUND THIRTEEN of the petition.

Under the heading entitled GROUND THIRTEEN contained in paragraph 12 of the petition the respondents deny the allegations contained in subsection (a).

Respondents admit the allegations contained in paragraph 12 subsections (b)

and (c ) of the petition.

Respondents admit the allegation contained in paragraph 12 subsection (d) of the petition.

Respondents deny the allegations contained in paragraph 12, the subsection entitled GROUND FOURTEEN of the petition.

Under the heading entitled GROUND FOURTEEN contained in paragraph 12 of the petition the respondents deny the allegations contained in subsection (a).

Respondents admit the allegations contained in paragraph 12 subsections (b) and (c ) of the petition.

Respondents admit the allegation contained in paragraph 12 subsection (d) of the petition.

Respondents deny the allegations contained in paragraph 12, the subsection entitled GROUND FIFTEEN of the petition.

Under the heading entitled GROUND FIFTEEN contained in paragraph 12 of the petition the respondents deny the allegations contained in subsection (a).

Respondents admit the allegations contained in paragraph 12 subsections (b) and (c ) of the petition.

Respondents admit the allegation contained in paragraph 12 subsection (d) of the petition.

Respondents deny the allegations contained in paragraph 12, the subsection entitled GROUND SIXTEEN of the petition.

13

Under the heading entitled GROUND SIXTEEN contained in paragraph 12 of the petition the respondents deny the allegations contained in subsection (a).

Respondents admit the allegations contained in paragraph 12 subsections (b) and (c ) of the petition.

Respondents admit the allegation contained in paragraph 12 subsection (d)(1) of the petition.

Respondents deny the allegation contained in paragraph 12 subsections (d)(2) through (d)(7) as the petitioner refers the reader to responses contained in paragraph 11 without specifics as to which part of paragraph 11 should be referenced. The respondent is left to speculate as to what information would be relevant for this response. Respondent's best guess would lead to petitioner's responses in paragraph 11 subsection (a) as being offered as responses in this paragraph. If so, the respondent admits to the allegations contained in paragraph 12 subsections (a)(2), (a)(3), (a)(4), (a)(6) and (a)(7); and denies the allegations contained in paragraph 12 subsection (a)(5) as an inaccurate rendition of the issues brought forward on post-conviction in the court below.

Respondents admit the allegation contained in paragraph 12 subsection (d)(8) of the petition.

13. Respondents admit the allegations contained in paragraph 13 of the petition.

14. Respondents deny the allegations contained in paragraph 14 of the petition only in that the petitioner incorrectly states that a decision on his latest petition for writ of certiorari before the United States Supreme Court is still pending as certiorari was denied

14

January 14, 2008. *See Branch v. Mississippi*, 128 S.Ct. 1084 (2008).

15.     Respondents admit the allegation contained in paragraph 15 of the petition.

16.     Respondents admit the allegation contained in paragraph 16 subsection (a)

of the petition.

Respondents deny the allegations contained in paragraph 16 subsections (b)

through (f) of the petition as the petitioner has failed to make the attempt to provide the

required addresses of his defense attorneys.  The names and respective addresses according

to the Mississippi Bar and/or the Mississippi Supreme Court are as follows:

    (b)     Callestyne Hall Crawford
            Neither the Mississippi Bar or the Mississippi Supreme Court lists an
            individual by this name as being licensed to practice law in the State of
            Mississippi.  However, in trial court filings this individual lists an
            address of P.O. Box 226, Greenwood, MS 38935. (MSB#2117)

( c) & (d)  Callestyne Hall Crawford
            Please see the information in (b)

            Waldo S. Stuckey, Jr.
            107 E. Market St.
            Greenwood, MS 38930

    (e)     James Lappan
            510 George St., Ste. 300
            Jackson, MS 39202

            Candy Lawson
            Neither the Mississippi Bar or the Mississippi Supreme Court lists an
            individual by this name as being licensed to practice law in the State of
            Mississippi.   However, this individual is listed on the petitioner's state
            court appellate brief as having an address of P.O. Box 2901, Jackson,
            MS 39207. (MSB#100582)

    (f)     Robert M. Ryan

15

13404 Hwy. 49 N.
Jackson, MS 39209

Louwlynn Vanzetta Williams
510 George St., Ste. 403
Jackson, MS 39202

William J. Clayton
96 Forrest Dr. N.
Sardis, MS 38666

17.     Respondents admit the allegations contained in paragraph 17 of the petition.

18.     Respondents admit the allegations contained in paragraph 18 of the petition.

19.     Respondents deny the allegations contained in the paragraph entitled

**"Therefore, petitioner asks that the Court grant the following relief:"** in that the

petitioner is entitled to no relief from this Court.

## AFFIRMATIVE DEFENSES

**AND NOW** having responded to each of the allegations contained in the Petition for

Writ of Habeas Corpus, Respondents would affirmatively show unto the Court the following:

A.     The Court lacks jurisdiction over the parties and the subject matter.

B.     The petition and/or its individual grounds fail to state a claim upon which

relief may be granted.

C.     The constitutional grounds cited for relief in the petition are precluded from

federal consideration in that such rest upon independent and adequate state law grounds.

D.     The grounds cited for relief in the petition are precluded from federal

consideration in that such rest on decisions of the Mississippi Supreme Court that are not

16

contrary to established precedent of the United States Supreme Court.

E.      The grounds cited for relief in the petition are precluded from federal consideration in that such rest upon a reasonable application of clearly established federal law as determined by the Supreme Court of the United States, and a reasonable determination of the facts in light of the evidence presented in state court proceedings.

F.      The grounds given for relief are without merit.

G.      To the extent that the claims in paragraph 12 under the heading entitled GROUND TWO subsection (a) rest on a claim of a Fourth Amendment violation, the claim is barred from habeas review on the basis of *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

H.      The petitioner has procedurally defaulted on the claim contained under the heading entitled GROUND ONE contained in paragraph 12 of the petition as the court below found the issue to be procedurally barred as having been capable of being raised at trial.

The petitioner has procedurally defaulted on the claim contained under the heading entitled GROUND SEVEN contained in paragraph 12 of the petition as the court below found the issue to be procedurally barred as having been capable of being raised at trial.

The petitioner has procedurally defaulted on the claim contained under the heading entitled GROUND FOURTEEN contained in paragraph 12 of the petition as the court below found the issue to be procedurally barred as having been capable of being raised at trial.

## AFFIRMATIVE MATTERS PURSUANT TO RULE 5

Pursuant to 28 U.S.C.A. Section 2254, Rule 5, Respondents would show unto the Court the following:

### 1. Procedural Background

The petition at bar originated in the Circuit Court of Carroll County, Mississippi. Branch was indicted, along with his cousin Deondray Johnson, for the capital murder of Dorothy Jorden during the commission of a robbery on April 26, 2001, in violation of MISS. CODE ANN. § 97-3-19 (2)(e). On May 20, 2002, trial commenced for Branch and concluded on May 22, 2002. The jury returned a verdict of guilty to capital murder during the first phase of the trial. At the conclusion of the separate sentencing hearing conducted on May 23, 2002, the petitioner was sentenced to death in the following verdict:

> We, the jury unanimously find from the evidence beyond a reasonable doubt that the following facts existed at the time of the commission of the capital murder charged in the indictment:
>
> 1. That the defendant actually killed Dorothy Jorden.
> 2. That the defendant attempted to kill Dorothy Jorden.
> 3. That the defendant contemplated that lethal force would be employed.
>
> Next we, the jury unanimously find the aggravating circumstance of:
>
> 1. That the capital offense was committed for pecuniary gain during the course of a robbery.
>
> Exists beyond a reasonable doubt and is sufficient to impose the death penalty and that there are insufficient mitigating circumstances to outweigh the aggravating circumstance, and we further find unanimously that the defendant should suffer death.
>
> /s/ James Glen Stevens

18

Foreman of the Jury

C.P. at 99.[1]

Branch's post-trial motions were denied on July 16, 2002.

On August 5, 2002, Branch filed his automatic appeal with the Supreme Court of

Mississippi and raised the following issues:

I.     THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE THREE, SECTION TWENTY-EIGHT, OF THE MISSISSIPPI CONSTITUTION FORBID THE EXECUTION OF LAWRENCE BRANCH AS MR. BRANCH IS MENTALLY RETARDED.

II.     MR. BRANCH WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL UNDER *STRICKLAND V. WASHINGTON* AT ALL STAGES OF THE PROSECUTION.

III.     MR. BRANCH'S EIGHTH AMENDMENT RIGHT TO REMAIN FREE FROM CRUEL AND UNUSUAL PUNISHMENT UNDER *CALDWELL V. MISSISSIPPI* AND HIS DUE PROCESS RIGHTS TO A FUNDAMENTALLY FAIR SENTENCING HEARING WERE VIOLATED WHEN MR. BRANCH'S ATTORNEY LIKENED DEATH BY LETHAL INJECTION TO PUTTING A SICK ANIMAL TO SLEEP, WHEN MR. BRANCH'S ATTORNEY OPINED THAT A DEATH SENTENCE WAS MORE LENIENT THAN A LIFE SENTENCE AND WHEN MR. BRANCH'S ATTORNEY IMPARTED THAT INDIVIDUALS WHO ARE SENTENCED TO DEATH NONETHELESS REMAIN ALIVE FOR YEARS.

IV.     EIGHTH AMENDMENT VIOLATIONS BASED ON DEFICIENT PERFORMANCE OF COUNSEL MANDATE THE DEATH SENTENCE BE VACATED.

V.     AS A RESULT OF CLAIM II AND CLAIM III, COUNSEL WAS INEFFECTIVE AT THE PENALTY PHASE UNDER *UNITED STATES V. CRONIC*.

---

[1]Court Papers.

VI.     PURSUANT TO SUBSECTIONS (3)(A) AND (3)(C) OF MISS.CODE ANN. § 99-19-105, THE DEATH SENTENCE IS ARBITRARY, EXCESSIVE AND DISPROPORTIONATE AND MR. BRANCH SEEKS MODIFICATION OF HIS SENTENCE UNDER MISS.CODE ANN. § 99-19-105(C).

VII.    MR. BRANCH'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS AND THE FOURTEENTH AMENDMENT RIGHTS OF MINORITY VENIRE MEMBERS WERE VIOLATED UNDER *BATSON V. KENTUCKY.*

VIII.   THE TRIAL COURT ERRED IN ALLOWING THE INTRODUCTION OF VICTIM IMPACT TESTIMONY AT SENTENCING.

IX.     TRIAL COURT ERRED IN REFUSING TO GIVE DEFENSE SENTENCING INSTRUCTIONS DS-1, DS-5, AND DS-10 AND THIS ERROR WAS NOT CORRECTED BY ADVISING DEFENSE COUNSEL OF HIS ABILITY TO ARGUE SUBSTANCE DURING SUMMATION.

X.      THE TRIAL COURT ERRED IN REFUSING TO GIVE DEFENSE SENTENCING INSTRUCTION DS-1 IN THAT DS-1 ADVISED THE JURY AS TO THE BURDEN OF PROOF.

XI.     TRIAL COURT ERRED IN REFUSING TO GIVE DEFENSE SENTENCING INSTRUCTION DS-2 IN THAT DS-2 PROVIDED A CONSTITUTIONALLY REQUIRED DEFINITION OF "MITIGATING CIRCUMSTANCE".

XII.    MR. BRANCH WAS DENIED DUE PROCESS IN THAT THE STATE FAILED IN ITS BURDEN TO SHOW THAT DEATH WAS THE APPROPRIATE SENTENCE IN THIS CASE.

XIII.   THE TRIAL COURT ERRED IN ALLOWING THE JURY TO CONSIDER THE UNCONSTITUTIONALLY DUPLICATIVE AGGRAVATING CIRCUMSTANCE OF THE FELONY OF ROBBERY/PECUNIARY GAIN, WHICH WAS ALSO USED TO ELEVATE THE CRIME TO CAPITAL MURDER.

XIV.    THE TRIAL COURT ERRED IN ALLOWING THE JURY TO

20

CONSIDER THE INVALID COMBINED AGGRAVATOR OF ROBBERY AND PECUNIARY GAIN, WHICH THE JURY USED IN SUPPORT OF A SENTENCE OF DEATH, DENYING MR. BRANCH A RELIABLE SENTENCE AS GUARANTEED BY THE UNITED STATES AND THE MISSISSIPPI CONSTITUTIONS.

XV.     THE PROSECUTOR COMMITTED PLAIN REVERSIBLE ERROR DURING GUILT CLOSING ARGUMENT AND SENTENCING CLOSING ARGUMENT BY IMPROPER AND UNFAIRLY PREJUDICIAL COMMENTS AND AS A RESULT BRANCH WAS DENIED A FUNDAMENTALLY FAIR TRIAL.

XVI.    THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON ALL THREE SENTENCING OPTIONS AVAILABLE UNDER MISSISSIPPI CODE SECTIONS 97-3-21 AND 99-19-101.

XVII.   THE AGGREGATE ERROR IN THIS CASE REQUIRES REVERSAL OF THE CONVICTION AND DEATH SENTENCE.

XVIII.  MISS. CODE ANN. § 99-19-101 IS FACIALLY UNCONSTITUTIONAL.

XIX.    MR. BRANCH'S CONVICTION IS UNSUPPORTED BY THE EVIDENCE ADDUCED AT TRIAL AND IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

On May 27, 2004, the Supreme Court of Mississippi affirmed Branch's conviction and sentence of death in it's written opinion. A petition for rehearing was filed and later denied on September 30, 2004. *See Branch v. State*, 882 So.2d 36 (Miss.2004).

Branch then filed his first petition for writ of certiorari with the Supreme Court of the United States on December 29, 2004, and raised the following claims:

1.      In affirming Branch's death sentence, did the state court violate Branch's Sixth and Fourteenth Amendment right to remain free of enhanced punishment where the State introduces no aggravation at the penalty phase other than facts found by Branch's jury in the first phase of this proceeding?

21

2.      In light of Question One, did the state court violate Branch's Eighth and Fourteenth Amendment rights to due process and to remain free of cruel and unusual punishment by placing the burden on Branch to prove he is worthy of a sentence less than death?

3.      In affirming Branch's death sentence, did the state court violate Branch's Eighth and Fourteenth Amendment rights to due process and equal protection and to remain free of cruel and unusual punishment by arbitrarily refusing Branch the opportunity to prove in a manner prescribed by law that he is mentally retarded?

4.      In affirming Branch's conviction and death sentence, did the state court violate Branch's Sixth and Fourteenth Amendment rights and the Fourteenth Amendment rights of a minority venire woman when one attorney for Branch volunteered a pretextual response to a <u>Batson</u> challenge made by Branch's other attorney?

5.      In affirming Branch's death sentence, did the state court violate Branch's Eighth and Fourteenth Amendment rights to due process and to remain free of cruel and unusual punishment in finding that <u>Caldwell</u> error committed by one of Branch's attorneys was harmless?

The United States Supreme Court denied certiorari on March 7, 2005. *See Branch v.*

*Mississippi*, 544 U.S. 907, 125 S.Ct. 1595, 161 L.Ed.2d 283 (2005).

On October 7, 2005, Branch then filed an Application for Leave to File a Petition for

Post-Conviction Relief in the Trial Court with the court below, raising the following issues:

GROUND I.       PETITIONER'S GENERAL POST-CONVICTION CLAIMS ARE NOT BARRED BY RES JUDICATA OR PROHIBITED BY THE IMPOSITION OF PROCEDURAL BARS.

GROUND II.      INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS AND CLAIMS ARISING UNDER *ATKINS V. VIRGINIA* ARE NOT DEFAULTED OR BARRED BY RES JUDICATA.

GROUND III.     THE TRIAL COURT ERRED IN ALLOWING THE

22

INTRODUCTION OF VICTIM IMPACT TESTIMONY AT SENTENCING.

GROUND IV. THE TRIAL COURT ERRED IN REFUSING TO GIVE DEFENSE INSTRUCTIONS DS-1, DS-5, AND DS-10 AND THIS ERROR WAS NOT CORRECTED BY ADVISING DEFENSE COUNSEL THAT THIS ISSUE COULD BE ARGUED IN SUMMATION.

GROUND V. THE TRIAL COURT ERRED IN REFUSING TO GIVE DEFENSE SENTENCING INSTRUCTION DS-2, IN THAT DS-2 PROVIDED A CONSTITUTIONALLY REQUIRED DEFINITION OF "MITIGATING CIRCUMSTANCE."

GROUND VI. THE TRIAL COURT ERRED IN REFUSING TO GIVE DEFENSE SENTENCING INSTRUCTION DS-1, IN THAT DS-1 ADVISED THE JURY AS TO THE BURDEN OF PROOF.

GROUND VII. LAWRENCE BRANCH WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT ALL STAGES OF THE PROSECUTION.

GROUND VII.(A)(1). COUNSEL ACTED INEFFECTIVELY IN THE INVESTIGATION AND PRESENTATION OF LAWRENCE BRANCH'S MENTAL RETARDATION CLAIM DURING THE PENALTY PHASE OF THE TRIAL.

GROUND VII.(A)(2). TRIAL COUNSEL WAS INEFFECTIVE FOR THE UNREASONABLE FAILURE TO INTRODUCE MENTAL HEALTH MITIGATION OTHER THAN THE FINDING OF MENTAL RETARDATION..

GROUND VII.(A)(3). TRIAL COUNSEL WERE INEFFECTIVE IN THE UNREASONABLE FAILURE TO FULLY INVESTIGATE.

GROUND VIII. LAWRENCE BRANCH WAS DENIED DUE

> PROCESS IN THAT THE STATE FAILURE IN ITS
> BURDEN TO SHOW THAT DEATH WAS THE
> APPROPRIATE SENTENCE IN THE CASE.

On June 1, 2006, Branch filed an Amendment to Post-Conviction Relief with Exhibits

and added a ninth issue that states:

> GROUND IX.     PETITIONER IS MENTALLY RETARDED THEREFORE
> HIS DEATH SENTENCE VIOLATES HIS
> CONSTITUTIONALLY GUARANTEED RIGHTS AND
> MUST BE VACATED.

Branch's application for post-conviction relief was denied on May 17, 2007, and his

motion for rehearing was later denied on August 16, 2007. *See Branch v. State*, 961 So.2d

659 (Miss.2007).

Branch then filed his second petition for writ of certiorari with the Supreme Court of

the United States on November 9, 2007, and raised the following claims:

> I.     THE CLAIM THAT MISSISSIPPI HAS NOT PROPERLY
> ADDRESSED THE STANDARD FOR DETERMINING MENTAL
> RETARDATION IN CAPITAL CASES WAS NOT PROPERLY
> PRESENTED TO THE COURT BELOW AND WAS HELD TO BE
> PROCEDURALLY BARRED BY THAT COURT, THEREFORE
> THIS CLAIM IS BARRED FROM CONSIDERATION BY THIS
> COURT ON CERTIORARI REVIEW.

> II.     THE CLAIM THAT VARIOUS STATES ADDRESS *ATKINS* IN
> CONFLICTING MANNERS IS AN ISSUE THAT HAS NEVER
> BEEN PRESENTED TO THE COURT BELOW, THEREFORE THIS
> CLAIM IS BARRED FROM CONSIDERATION BY THIS COURT
> ON CERTIORARI REVIEW.

The United States Supreme Court denied certiorari on January 14, 2008. *See Branch*

*v. Mississippi*, 128 S.Ct. 1084 (2008).

24

On January 14, 2008, Branch then filed with this Court this instant Petition for Habeas Corpus  By A Person In State Custody.

### 2.  Factual Background

This case arises from the brutal robbery and murder of fifty-seven-year-old Dorothy Jorden, which took place on January 21, 2001, just outside of Jorden's home in Grenada, Mississippi.  Specifically, the evidence reflects that, on the night of January 20, 2001, Lawrence Branch and his cousin, Deondray Johnson, left Johnson's house and headed for Dot's Burger Bar, a local restaurant and club owned by the victim.  Johnson brought with him a stick of furniture wood that had been lying in the front yard of his home; Branch "did not ask any questions" about the stick.  Branch and Johnson stayed at Dot's until closing, drinking beer and watching Jorden win money playing cards.  Branch and Johnson left Dot's at approximately 1:30 a.m. on the morning of January 21.

Shortly thereafter, Branch stopped his car on the side of the road; he and Johnson then discussed robbing and killing Jorden.  Branch drove back to Dot's and parked in a secluded area, where he and Johnson watched the club and waited for the remaining patrons to leave. Around 2:30 a.m., they spotted the victim leaving the club to give Branch's aunt a ride home. When Jorden left, Branch and Johnson took their places.  They got out of Branch's car, taking with them the piece of furniture wood they had brought from home more than three hours earlier; they walked through the woods up to Jorden's home, which was located adjacent to Dot's; and they lay in wait for Jorden to return.

Upon Jorden's return, Branch and Johnson attacked Jorden with the piece of wood,

with Johnson taking the first swing and striking her in the head. Branch confessed he and Jorden struck Jorden six times, three times each. In Branch's words, "I heard her holler. Then I came from around the edge and I heard them tussling to the ground. And [Johnson] hit her a couple of times, and I hit her a couple of times. And I was just holding her down. I hold her down where I could get the money out of her pocket." The stick broke during the beating – one so severe that Jorden's earring was ripped out of her ear, one so severe that her head left an indentation in the ground from where Branch and Johnson slammed her into it.

After the murder Branch and Johnson took two hundred dollars from Jorden's bag. They dragged Jorden inside her home, where they sat her up on the floor of the kitchen and then proceeded to search the house for other money. They left Jorden's home, threw the broken pieces of stick into the woods, and burned Branch's clothes (which were covered in Jorden's blood); a cursory inspection of Johnson's clothes did not reveal signs of blood. Finally, after leaving Jorden in a puddle of blood with her brain "shaken back and forth" Branch and Johnson went to the Huddle House diner in Grenada and ate "eggs, bacon and pancakes".

Evidence of Jorden's blood was found on Johnson's clothing and on the pieces of stick recovered by the police from the woods behind Jorden's home. The pieces were found to have previously constituted one larger stick; the wood was consistent with other furniture wood found at Johnson's home. A bag discovered between Johnson and Branch's home contained a pistol belonging to Jorden, as well as food stamps with Johnson's fingerprints on them. In light of the DNA evidence placing Jorden's blood on Johnson's clothing, Branch

nevertheless asserted he and Johnson were together the entire evening of Jorden's murder.

Branch gave three statements concerning his involvement in Jorden's murder. In the first, Branch denied any involvement; however, the accounting of his and Johnson's whereabouts on the night of the murder so contradicted Johnson's statement that the police became suspicious. This led to Branch's second statement, in which he gave a video-taped confession to police. By the time Branch went to trial, he claimed he and Johnson actually spent the night of the murder at a club, the location of which he could not say. He also claimed to have spent part of the night with a woman at her home; however he did not know the woman's name, or even know where she lived. The facts and procedural history of this case are found in the trial record and at *Branch v. State*, 882 So.2d 36, 44-47, ¶¶ 2-13 (Miss. 2004).

The respondent would submit that these renditions of the facts are an accurate reflection of what is contained in the transcript of the trial in this case and would adopt the same as the statement of the facts in this case.

### 3. Scope Of Review

Petitioner filed his writ of habeas corpus with this Court on January 14, 2008. As stated above, because this petition was filed after April 24, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) apply with full force to this petition. *Nobles v. Johnson*, 127 F.3d 409 (5th Cir. 1997); *Williams v. Cain*, 125 F. 3d 269, 273-74 (5th Cir. 1997); *McBride v. Johnson*, 118 F.3d 432, 436 (5th Cir. 1997) ("Because this case comes within the parameters of the Antiterrorism and Effective death Penalty Act of

1996 (AEDPA), Pub.L.No.104-132, 110 Stat.1214 (1996), we apply the standard of review embodied in the AEDPA. *See Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996), *cert. denied*, 502 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997).")*. See also Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Any claims that are not barred were fully addressed on the merits by the Mississippi Supreme Court on direct appeal and/or on state post-conviction review. The resolution of the merits of these claims do not represent a decision that is contrary to or an unreasonable application of clearly established United States Supreme Court precedent as announced by the United States Supreme Court. Therefore, under the standards of review found in the AEDPA, habeas relief cannot be granted with respect to these claims.

The most sweeping change provided in the AEDPA is found in Section 104(3) codified in 28 U.S.C. § 2254(d). This subsection provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State Court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

Thus, Branch's claims involving mixed questions of law and fact are governed by the dictates of § 2254 (d), which holds that a federal court cannot grant habeas relief unless it

28

determines that the state court's decision involved an unreasonable application of the law to the facts. *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Moore v. Johnson*, 101 F.3d 1069, 1075-76 (5th Cir. 1996) (*citing Drinkard v. Johnson*, 97 F.3d 751, 767-68 (5th Cir. 1996)).[2]

This "unreasonable application" standard of review of state court decisions does not mean that a federal court may grant habeas relief based on a simple disagreement with the state court decision; such a standard would amount to nothing more than a de novo review. *Drinkard*, 97 F.3d at 768. Instead, a federal habeas court can grant habeas relief only if the state court's decision was unreasonable. In *Williams v. Taylor*, *supra*, the Supreme Court held:

> Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgement that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.
> 529 U.S. at 411.

The Court further stated in Williams,

> In sum, § 2254(d)(1) places a new constraint on the power of the federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in the state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of

---

[2]While *Moore* and *Drinkard* incorrectly applied the AEDPA retroactively to habeas corpus petitions pending prior to its enactment, the manner in which the AEDPA will be applied in a proper case is controlling on this case. *McBride v. Johnson,* 118 F.3d 432, 436 (5th Cir. 1997).

. . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause. A federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies theat principle to the fact's of the prisoner's case.

529 U.S. at 412-413.

"In effect, a reasonable, good faith application of Supreme Court precedent will immunize the state court conviction from federal habeas reversal." *Mata v. Johnson*, 99 F.3d 1261, 1268 (5th Cir. 1996), vacated in part on other grounds, 105 F.3d 209 (5th Cir. 1997).

Branch has failed to demonstrate how, and respondents assert he cannot show, the resolution of the claims raised on direct appeal or state post-conviction review "resulted in a decision contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time of the direct appeal and post-conviction review litigation. Further, any claims of ineffective assistance of counsel being questions of mixed law and facts do not present decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceedings. Branch has not stated a claim on which relief can be granted.

The long standing requirement of deference to factual findings made by state courts remains intact in the amendments to § 2254. Section 2254(e) reads:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgement of a State court, a determination of a factual issue made by a State court shall be presumed to be

30

correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

However, the AEDPA changed the standard of proof that a petitioner must adduce to rebut the presumption of correctness of state court findings of fact. The standard is no longer a preponderance of the evidence standard, but the higher standard of clear and convincing evidence. Branch cannot meet this burden to overcome the findings of fact made by the State court's clear and convincing evidence. *See Patterson v. Dretke,* 370 F.3d 480, 484 (5th Cir. 2004); *Morrow v. Dretke*, 367 F.3d 309, 315 (5th Cir. 2004).

In cases governed by the AEDPA, 28 U.S.C. § 2254, the analysis differs depending upon whether the issue is one of law, fact, or both. *See Drinkard v. Johnson*, 97 F.3d 751, 767-68 (5th Cir. 1996). For questions of fact, habeas relief may be granted only if the Court finds the state court made a determination of fact which was unreasonable in light of the evidence presented to it. *See* 28 U.S.C. § 2254(d)(2); *Drinkard*, 97 F.3d at 767-68. When reviewing such factual determinations, the Court must presume correct factual findings of the state court, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1); *Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997). When considering question of law, on the other hand, this Court may grant habeas relief only if the state court's determination of law is contrary to "clearly established" Supreme Court precedent. *See* U.S.C. § 2254(d)(1); *Drinkard*, 97 F.3d at 768. The Fifth Circuit, in *Jones v. Dretke*, 375 F.3d 352 (5th Cir. 2004), explained this requirement, stating:

31

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; . . . 28 U.S.C. § 2254(d) (emphasis added). The Supreme Court, interpreting § 2254(d)(1), held that "a state-court decision is . . . contrary to this Court's precedent if the State court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct.1495, 146 L.Ed. 2d 389 (2000). In order to find that a state adjudication is objectively unreasonable, "the state court's application [of federal law] must be more than merely incorrect." *Robertson v. Cockrell*, 325 F.3d 243, 248 (5th Cir. 2003) (enbanc).

375 F.3d at 353-354.

Thus, the state court resolution of a claim must "not only be erroneous, but objectively unreasonable" in order for the habeas relief to be granted. *Yarborough v. Alvarado*, 541 U.S. 652, 124 S.Ct 2140, 2150 (2004); *Middleton v. McNeil*, 541 U.S. 433, 124 S.Ct. 1830, 1832 (2004); *Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12 (2003), *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S.Ct. 1, 4, 157 L.Ed.2d 1 (2003); *Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S.Ct. 1166, 1175 (2003); *Williams v. Taylor*, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In *Holland v. Jackson*, 542 U.S. 649, 124 S.Ct. 2736 (2004), the United States Supreme Court gave the federal habeas courts the following admonition:

As we explained in *Viscotti*, § 2254(d) requires that "state-court decisions be given the benefit of the doubt." *Id*. at 24, S.Ct. 357. "[R]eadiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Ibid*. The Sixth Circuit ignored those prescriptions.

124 S.Ct. at 2739.

*See Woodford v. Viscotti*, 537 U.S. 19, 123 S.Ct. 357 (2002).

Looking to mixed questions - that is, those containing issues of law and fact - the Fifth

Circuit held in *Patterson v. Dretke*, 370 F.3d 480 (5th Cir. 2004):

> "Section 2254(d)(1) provides the standard of review for questions of law and
> mixed questions of law and fact." *Caldwell v. Johnson*, 226 F.3d 367, 372 (5[th]
> Cir. 2000). A state court's decision is "contrary to . . . clearly established
> Federal law, as determined by the Supreme Court of the United States . . . if
> the state court arrives at a conclusion opposite to that reached by th[e] Court
> on a question of law or if the state court decides a case differently than th[e]
> Court has on a set of materially indistinguishable facts." *Williams v. Taylor*,
> 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A decision
> "involve[s] an unreasonable application of [ ] clearly established Federal law,
> as determined by the Supreme Court of the United States . . . if the state court
> identifies the correct governing legal principle from th[e] Court's decisions but
> unreasonable applies that principle to the facts of the prisoner's case." *Id.* at
> 413, 120 S.Ct. 1495.
>
> 370 F.3d at 483-84.

*See Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.389 (2000); *Haley*

*v. Cockrell*, 306 F.3d 257, 263 (5th Cir. 2002); *Carter v. Johnson*, 110 F.3d 1098, 1106-08

(5th Cir.) ("With a mixed question of law and fact, the facts are presumed correct and then

the law is reviewed for reasonableness, not de novo."). These are the standards that must be

applied by this Court in determining the claims made in this case.

Habeas relief generally may not be premised on rules of constitutional law that have

yet to be announced or that were announced after the challenged conviction became final.

*See Teague v. Lane*, 489 U.S. 288, 305-07, 109 S.Ct. 1060, 1073, 103 L.Ed.2d 334 (1989).

See also *Schiro v. Summerlin*, 542 U.S. 348, 124 S.Ct. 2519 (2004); *Beard v. Banks*, 542

U.S. 406, 124 S.Ct. 2504 (2004). In explaining what rules are to be retroactively applied the

United States Supreme Court, in *Tyler v. Cain*, 533 U.S. 656, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001), held:

> The Supreme Court does not "ma[k]e" a rule retroactive when it merely establishes principles of retroactivity and leaves the application of those principles to lower courts. In such an event, any legal conclusion that is derived from the principles is developed by the lower court (or perhaps by a combination of courts), not by the Supreme Court.[4] *We thus conclude that a new rule is not "made retroactive to cases on collateral review" unless the Supreme Court holds it to be retroactive.*[5]
>
> _____
> FN4. Similarly, the Supreme Court does not make a rule retroactive through dictum, which is not binding. *Cf. Seminole Tribe of Fla. V. Florida*, 517 U.S. 44, 67, 116 S.Ct. 1144, 134 L.Ed.2d 252 (1996) (contrasting dictum with holdings, which include the final disposition of a case as well as the preceding determinations "*necessary* to that result" (emphasis added)).
>
> FN5. Tyler argues that defining "made" to mean "held" would create an anomaly: When it is obvious that a rule should be retroactive, the courts of appeals will not be in conflict, and this Court will never decide to hear the case and will never make the rule retroactive. Thus, Tyler concludes, we should construe § 2244(b)(2)(A) to allow for retroactive application whenever the "principles" of our decisions, as interpreted by the courts of appeals, indicate that retroactivity is appropriate. This argument is flawed, however. First, even if we disagreed with the legislative decision to establish stringent procedural requirements for retroactive application of new rules, we do not have license to question the decision on policy grounds. *See Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Second, the "anomalous" result that Tyler predicts is speculative at best, because AEDPA does not limit our decision to grant certiorari to cases in which the courts of appeals have reached divergent results.
>
> 533 U.S. at 663, 121 S.Ct. at 2482 [Emphasis added.]

Thus, no new rule can be retroactively applied unless the Supreme Court has specifically held it to have retroactive application.

Further, even if the Court finds error in some aspect of the case, before the Court can

grant habeas relief, the Court must also conduct a harmless error analysis under the dictates of *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). *See Billiot v. Puckett*, 135 F.3d 311 (5th Cir. 1998), *cert. denied*, 525 U.S.966, 119 S.Ct 413, 142 L.Ed.2d 336 (1998). Any constitutional error found, must be subjected to an analysis of whether the "error had a substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 637.

Basically, in order for habeas relief to be granted to petitioner, this Court must find that the State court resolution of the claims raised were contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct.1495, 146 L.Ed.2d 389 (2000); *Jones v. Dretke*, 375 F.3d 352, 354 (5th Cir. 2004).

Respondents would further point out that the petitioner is not entitled to an evidentiary hearing on any of the claims presented in this petition. The AEDPA provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that -
>
> (A) the claim relies on -
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder

35

would have found the applicant guilty of the underlying offense.

Thus any factual basis of Branch's claims not developed in the State court proceedings do not fall into either of the exceptions noted by § 2254. Branch does not present to this Court anything new for determination. He contends that this Court should conduct an evidentiary hearing concerning the factual allegations raised in the petition. Such hearing would be contrary to the dictates of the AEDPA. Petitioner is not entitled to an evidentiary hearing to further develop facts not developed at trial, on direct appeal or state-post conviction review.

Further, claims Branch presents here were held to be procedurally barred from consideration on direct appeal or state post-conviction review. Thus, this Court is similarly barred from consideration of these claims as they rest on the adequate and independent state law ground of procedural bar or waiver. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed2d 594 (1977); *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d640 (1991); *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 1151 L.Ed.2d 706 (1991); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Further, in those instances where the State court has imposed a procedural bar and then gone on to address the merits of the claim, the procedural bar must be recognized by this Court as a bar to consideration of the merits of that claim. *See Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

In *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996), the United States Supreme Court held:

. . . Title 28 U.S.C. § 2254(b) bars the granting of habeas corpus relief "unless

36

it appears that the applicant has exhausted the remedies available in the courts of the State." Because "[t]his requirement . . . refers only to remedies still available at the time of the federal petition," *Engle v. Isaac*, 456 U.S. 107, 125, n. 28, 102 S.Ct.1558, 1570, n. 28, 71 L.Ed.2d 783 (1982), it is satisfied "if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law," *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989). However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default. *Teague v. Lane, supra*, at 298, 109 S.Ct. at1068-1069; *Isaac, supra*, at 125, n. 28, 129, 102 S.Ct. at 1570, n.28, 1572; *Wainwright v. Sykes*, 433 U.S. 72, 90-91, 97 S.Ct. 2497, 2508-2509, 53 L.Ed.2d 594 (1997).

518 U.S. at 161-162.

Earlier in *Teague v. Lane*, 489 U.S. 288 (1989), the Court held:

. . . "It is well established that 'where an appeal was taken from a conviction, the judgment of the reviewing court is *res judicata* as to all issues actually raised, and those that could have been presented but were not are deemed waived.'" *People v. Gaines*, 105 Ill.2d 79, 87-88, 85 Ill.Dec. 269, 274, 473 N.E.2d 868, 873 (1984) (citation omitted), cert. denied, 471 U.S. 1131, 105 S.Ct. 2666, 86 L.Ed.2d 282 (1985). The default prevents petitioner from raising the Swain claim in collateral proceedings under the Illinois Post-Conviction Act, Ill.Rev.Stat., ch. 38, ¶ 122-1 *et seq.* (1987), unless fundamental fairness requires that the default be overlooked. *People v. Brown*, 52 Ill.2d 227, 230, 287 N.E.2d 663, 665 (1972).

The fundamental fairness exception is a narrow one, and has been applied in limited circumstances. Compare *People v. Goerger*, 52 Ill.2d 403, 406, 288 N.E.2d 416, 418 (1972) (improper instruction on reasonable doubt "does not constitute such fundamental unfairness as to obviate the *res judicata* and waiver doctrines"), with *People v. Ikerd*, 47 Ill.2d 211, 212, 265 N.E.2d 120, 121 (1970) (fundamental fairness exception applies "where the right relied on has been recognized for the first time after the direct appeal"), and *People v. Hamby*, 32 Ill.2d 291, 294-295, 205 N.E.2d 456, 458 (1965) (fundamental fairness exception applies to claims that defendant asked counsel to raise on direct appeal). It is clear that collateral relief would be unavailable to petitioner. *See People v. Beamon*, 31 Ill.App.3d 145, 145-146, 333 N.E.2d 575, 575-576 (1975) (abstract of decision) (not invoking fundamental fairness

exception and holding that *Swain* claim not raised on direct appeal could not be raised for the first time in collateral proceedings). As a result, petitioner has exhausted his state remedies under 28 U.S.C. § 2254(b) with respect to the *Swain* claim. See *Engle v. Isaac*, 456 U.S. 107, 125-126, n.28, 102 S.Ct. 1558, 1570-1571, n. 28, 71 L.Ed.2d 783 (1982); *United States ex rel. Williams v. Brantley*, 502 F.2d 1383, 1385-1386 (CA7 1974).

Under *Wainwright v. Sykes*, 433 U.S. 72, 87-91, 97 S.Ct. 2497, 2506-2509, 53 L.Ed.2d 594 (1977), petitioner is barred from raising the *Swain* claim in a federal habeas corpus proceeding unless he can show cause for the default and prejudice resulting therefrom. See *Engle v. Isaac, supra*, 456 U.S., at 113-114, 117, 124-135, 102 S.Ct., at 1564-1565, 1566, 1570-1576 (applying procedural default rule to claim that had never been raised in state court). Petitioner does not attempt to show cause for his default. Instead, he argues that the claim is not barred because it was addressed by the Illinois Appellate Court. Cf. *Caldwell v. Mississippi*, 472 U.S. 320, 327-328, 105 S.Ct. 2633, 2638-2639, 86 L.Ed.2d 231 (1985). We cannot agree with the petitioner's argument. The Illinois Appellate Court rejected petitioner's Sixth Amendment fair cross section claim *without* mentioning the Equal Protection Clause on which Swain was based or discussing whether Swain allows a prosecutor to be questioned about his use of peremptory challenges once he volunteers an explanation. See *People v. Teague*, 108 Ill.App.3d, at 895-896, 64 Ill.Dec., at 405, 439 N.E.2d, at 1070. Accordingly, we hold that petitioner's *Swain* claim is procedurally barred, and do not address its merits.

Our application of the procedural default rule here is consistent with *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308, (1989), which holds that a "procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar" (citations and internal quotations omitted). The rule announced in *Harris V. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding. It is simply inapplicable in a case such as this one, where the claim was never presented to the state courts. *See id.*, at 268-270, 109 S.Ct., at 1046-1047 (O'CONNOR, J., concurring).

489 U.S. at 297-299.

All of this is to say that any claim that has not been fairly presented to the state courts is

unexhausted. Under the provisions of § 99-39-5 (2), and § 99-39-27 (9), petitioner cannot now exhaust these claims. Therefore, the Court must hold any such claims to be procedurally barred from consideration on federal habeas review.

Finally, it appears the claims petitioner is presenting to Court have been presented to the State courts. If after further review of the supporting memorandum it is discovered that petitioner is presenting claims not presented to the state courts, respondents reserve the right to contend that any such claims are not exhausted for the purposes of habeas review. The respondent would submit that the resolution of the claims presented to the Mississippi Supreme Court do not represent decisions that are contrary to or an unreasonable application of clearly established federal law as announced by the United States Supreme Court, nor do they represent an unreasonable determination of the facts as shown by the state court record. Branch is entitled to no habeas relief.

WHEREFORE, PREMISES CONSIDERED, respondents respectfully move this Court to deny the requested relief and dismiss the petition for writ of habeas corpus with prejudice. Also, respondents would assert that petitioner is not entitled to discovery or an evidentiary hearing. Further, respondents would assert that any request for a certificate of appealability to appeal to the Fifth Circuit should be denied.

Respectfully submitted,

**JIM HOOD**
ATTORNEY GENERAL
STATE OF MISSISSIPPI

**PAT MCNAMARA**
SPECIAL ASSISTANT ATTORNEY GENERAL
Miss. Bar No. 99838
(*Counsel of Record*)

**MARVIN L. WHITE, JR.**
ASSISTANT ATTORNEY GENERAL

BY:   s/ **PAT MCNAMARA**

OFFICE OF THE ATTORNEY GENERAL
Post Office Box 220
Jackson, Mississippi 39205
Telephone:  (601) 359-3680

## CERTIFICATE OF SERVICE

This is to certify that I, Pat McNamara, Special Assistant Attorney General for the

State of Mississippi, have electronically forwarded the foregoing ANSWER TO PETITION

FOR WRIT OF HABEAS CORPUS with the Clerk of the Court using the ECF system which

sent notification of such filing to the following:

        Kenneth H. Coghlan, Esquire
        Post Office Drawer 1360
        Oxford, MS 38655

        Thomas C. Levidiotis, Esquire
        Post Office Box 1617
        Oxford, Mississippi 38655

This the 14th day of March, 2008.

                              s/ **PAT MCNAMARA**